UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHAWN P.[1],

Plaintiff,

v.

KILOLO KIJAKAZI[2], Acting Commissioner of
Social Security,

Defendant.

Case No.:  20cv1054-MSB

**ORDER REGARDING JOINT MOTION FOR
JUDICIAL REVIEW [ECF NO. 14]**

On June 9, 2020, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability, disability insurance benefits, and supplemental security income.  (ECF No. 1 at 2; Certified Admin. R. ("AR") 248-49, ECF No. 11.)

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] The Court hereby substitutes Kilolo Kijakazi, Acting Commissioner of Social Security, for Andrew Saul, the former Commissioner of Social Security, as Defendant in this suit.  See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

Now pending before the Court is the parties' Joint Motion for Judicial Review. (See ECF No. 14.)  For the reasons set forth below, the Court **ORDERS** that Judgment be entered affirming the decision of the Commissioner.

## I.  PROCEDURAL BACKGROUND

On March 2, 2017, Plaintiff filed his applications for disability insurance benefits and supplemental security income, alleging disability beginning on November 1, 2013. (AR 248-49.)  After the application was denied initially, (AR 181-84), and on reconsideration, (AR 194-98), on March 23, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), (see AR 200-01).  On March 26, 2019, ALJ Kevin Messer held an administrative hearing during which Plaintiff was represented by counsel.  (AR 37-75.)  A vocational expert ("VE") was also present and gave testimony. (See AR 66-71.)  On June 11, 2019, the ALJ found that Plaintiff was not disabled.  (AR 15-30.)

On August 7, 2019, Plaintiff requested through new counsel that the Appeals Council review the ALJ's decision.  (AR 245-47.)  The Appeals Council denied the request for review on April 19, 2020, (AR 1-3), resulting in the ALJ decision becoming the final decision of the Commissioner, (42 U.S.C. § 405(h)), but subject to judicial review, (42 U.S.C. § 405(g)).  On June 9, 2020, Plaintiff timely filed the instant civil action.  (ECF No. 1.)

## II.  SUMMARY OF THE ALJS' FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.

At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013 and had not engaged in substantial gainful activity since November 1, 2013, the alleged onset date.  (AR 21.)  At step two, the ALJ found that Plaintiff had the following severe impairments that significantly limited his ability to perform basic work activities:  seizure disorder, chronic pain syndrome, migraine, degenerative disc disease, status post fracture of left big toe, status post bilateral

fracture of first metatarsal, schizoaffective disorder, posttraumatic stress disorder, anxiety disorder, and major depressive disorder.  (AR 21.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 21.)  Next, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to standing and/or walking up to two hours in an eight hour workday; frequent stooping and crouching; occasional kneeling, crawling, and climbing of ramps/stairs; no climbing of ladders, ropes, or scaffolds and no balancing.  Further he must avoid concentrated exposure to extreme temperatures, loud noise, vibration, fumes, odors, gases and other pulmonary irritants, and to hazards such as operational control of moving machinery and unprotected heights.  In addition, the claimant is limited to understanding, remembering, and carrying out simple, routine tasks and can perform jobs requiring only simple work-related decisions.

(AR 22.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform his past relevant work as a locksmith.  (AR 28.)

The ALJ then proceeded to step five of the sequential evaluation process.  (AR 28-30.)  Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in the national economy, such as order clerk, touch-up screener, and final assembler, the ALJ found that Plaintiff was not disabled.  (AR 29-30.)

### III.  DISPUTED ISSUES

As reflected in the parties' Joint Motion for Judicial Review, Plaintiff raises the following issues as the grounds for reversal and remand:

1.      Whether the ALJ properly considered the opinions of nonexamining psychiatrist and psychologist (ECF No. 14 at 4);

2.      Whether the ALJ properly accepted vocational expert testimony (id.); and

3

3.    Whether substantial evidence supports the ALJ decision at step five of the sequential evaluation process, (id.).

## IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  Id.; Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)).  Where the evidence is susceptible to more than one rational interpretation, an ALJ's decision must be upheld.  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to an ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that substantial evidence supports an ALJ's conclusions, the court may set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  However, where the ALJ's error is harmless, no reversal is warranted.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds, as recognized in Sweets v. Kijakazi, 855 F. App'x 325, 326 (9th Cir. 2021).

/ / /

/ / /

/ / /

## V.  DISCUSSION

### A.  The ALJ's RFC Included the Nonexamining Psychologist and Psychiatrist's Opinions

Plaintiff argues that although the ALJ explicitly gave more weight to the opinions of the state agency mental health consultants, he erred when he rejected two specific characteristics of their RFC assessments without explanation.  (ECF No. 14 at 6-7.)  Specifically, Plaintiff notes that the ALJ did not state an intention to reject Dr. Amado's opinion that Plaintiff could "learn and retain simple instructions that have been clearly explained," and Dr. Telford-Tyler's opinion that he could "carry out simple, and some detailed instructions."  (Id. at 7, 9 (emphasis added)).  Nevertheless, the ALJ omitted these more specific limitations from his RFC, which stated "the claimant is limited to understanding, remembering, and carrying out simple, routine tasks and can perform jobs requiring only simple work-related decisions."  (AR 22.)  To the extent these agency medical consultants' limitations were not included in the ALJ's RFC, Plaintiff argues the ALJ's hypothetical to the VE was incomplete.  (ECF No. 14 at 7, 9.)  The Commissioner contends that when the state experts' opinions are considered holistically, the ALJ properly incorporated them into his RFC.  (Id. at 7-8.)  Even if there was any error, the Commissioner contends it did not prejudice Plaintiff.  (Id. at 8-9.)

#### 1.    Applicable law

An RFC is the ALJ's assessment of a claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996).[3]  It represents the most that a person can do despite his or her limitations, rather than the least.  (Id.)  "The RFC assessment must always consider and address medical source opinions.  If the RFC

---

[3] "Although SSR 96-6p was rescinded and replaced by SSR 17-2p on March 27, 2017, SSR 96-6p applies because Plaintiff's claim was filed before that date."  Herlinda C. v. Saul, No. 2:19-CV-07515-JDE, 2020 WL 3402801, at *5 (C.D. Cal. June 19, 2020) (citations omitted).

1  assessment conflicts with an opinion from a medical source, the adjudicator must

2  explain why the opinion was not adopted." Id.  The Ninth Circuit has explained that to

3  permit court review of administrative social security decisions, the ALJs "must explain

4  why significant, probative evidence has been rejected." Vincent on Behalf of Vincent v.

5  Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (internal quotation marks and citation

6  omitted).  "The Commissioner may reject the opinion of a non-examining physician by

7  reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240,

8  1244 (9th Cir. 1998).

9      "An ALJ must consider even mild mental limitations in his or her RFC analysis."

10  Patricia C. v. Saul, No. 19-CV-00636-JM-JLB, 2020 WL 4596757, at *12 (S.D. Cal. Aug. 11,

11  2020), report and recommendation adopted sub nom Craig v. Saul, 2020 WL 5423887

12  (S.D. Cal. Aug. 11, 2020); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685,

13  690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is

14  defective.").  However, the RFC need not quote each and every finding, so long as the

15  RFC captures the limitations in the medical opinion.  See Stubbs-Danielson v. Astrue, 539

16  F.3d 1169, 1174 (9th Cir. 2008) (holding that RFC limitation to "simple tasks,"

17  incorporated more specific limitations, "including those related to pace and the other

18  mental limitations regarding attention, concentration, and adaptation").

19      If an ALJ makes an error, such as failing to explain an unadopted medical source

20  opinion, "we uphold the decision where the error is harmless," meaning that "it is

21  inconsequential to the ultimate nondisability determination . . ." Treichler v. Comm'r of

22  Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted).

23      **2.    Dr. Amado and Dr. Telford-Tyler's opinions**

24      Dr. Amado completed a Mental Residual Functional Capacity Assessment

25  ("MRFCA") of Plaintiff on initial review.  (AR 91-93.)  Dr. Amado opined that Plaintiff was

26  moderately limited in his ability to understand and remember detailed instructions and

27  specified that Plaintiff was "able to learn and retain simple instructions that have been

28  clearly explained." (AR 92.)  Further, he found Plaintiff's sustained concentration and

persistence limitations rendered him moderately limited in his ability to carry out detailed instructions, while not significantly limited at carrying out short and simple instructions, and explained that Plaintiff could "implement simple instructions with adequate concentration/persistence/pace in order to complete usual work schedules." (AR 92.)  He found Plaintiff moderately limited at interacting appropriately with the general public and coworkers or peers, noting that he would be "able to accept supervision, to get along superficially with prospective coworkers, and to deal incidentally with the general public."  (AR 93.)  Finally, Dr. Amado opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, and "able to adapt to minimal changes in the prospective work setting over time."  (AR 93.)

On reconsideration, Dr. Telford-Tyler conducted another MRFCA.  (AR 136-38.) She did not find Plaintiff limited in understanding and memory or social interactions. (AR 136-37.)  She identified some limitations in Plaintiff's pace and persistence, specifically moderate limitations in his ability to carry our detailed instructions, maintain attention and concentration for extended periods, perform activities on a schedule and with punctuality and regular attendance, and his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without [unreasonable] rest periods."  (AR 137.)  Finally, she found him moderately limited in his ability to respond appropriately to changes in the work setting.  (AR 137.)  The narrative explanation of her assessment stated:

> A. UNDERSTANDING AND MEMORY: The claimant has the ability to understand, remember, and carry out simple, and some detailed instructions and to follow work related procedures.
> B. SUSTAINED CONCENTRATION AND PERSISTENCE:  The claimant has the ability to maintain attention and perform at an acceptable consistent pace on simple tasks for 2-hour periods; over 8-hour work days and 40-hour workweeks with normal breaks and without interruption from psychologically based symptoms but would have occasional difficulty with more detailed tasks.  The claimant would be able to do so under ordinary supervision and also would be able to make simple and detailed work-related

decisions.   Additionally the claimant would be able to maintain regular attendance and punctuality.

C. SOCIAL INTERACTION: The claimant is capable of relating appropriately on a casual basis with the public.  The claimant is able to accept direction and criticism from supervisors, and is able to relate appropriately to co-workers without unduly distracting them or exhibiting behavioral extremes. Additionally the claimant is capable of asking simple and detailed questions and making requests for assistance.

D. ADAPTATION: The claimant has the ability to adapt to routine changes in the work setting and is able to avoid normal hazards and take appropriate precautions when needed.  The claimant is also capable of setting realistic goals and making plans independently of others.

(AR 137-38.)

### 3.    ALJ's treatment of non-examining mental health expert opinions

In the ALJ's discussion of Plaintiff's mental RFC, he engaged in an extensive review of Plaintiff's mental health treatment records.  (AR 24-25.)  He also discussed, though in less detail, the opinions of the consultative examiner and state agency medical consultants.  He gave little weight to the opinion of consultative examiner, Samuel Etchie, MD, who had found Plaintiff had mild to no functional limitations related to his mental impairments.  (AR 27.)  His reason for discrediting Dr. Etchie was that "[a]lthough the claimant appears to have periods of relative stability when compliant with prescribed treatment, his treatment records demonstrate that even during these periods the claimant tends to experience severe symptoms, including auditory hallucinations, symptoms of depression, and anxiety.  Accordingly, [Dr. Etchie's opinion] does not truly capture the claimant's functional capacity when compared with the longitudinal medical record."  (AR 27-28.)  The ALJ instead gave "more weight" to the opinions of "State agency medical consultants at the initial and reconsideration levels that the claimant is limited to simple tasks with limited public contact." (AR 28.)  The ALJ explained that these limitations take into account the claimant's ongoing mental symptoms during periods of relative mental stability and compliance with treatment, as described in his psychiatric outpatient progress notes.  (AR 28.)  Finally, noting that the

evidence demonstrated that Plaintiff could "interact with others without significant difficulties" "when compliant with treatment," the ALJ found that Plaintiff had only mild limitations in social interactions.  (Id.)

Based on all the foregoing, the ALJ included the following mental limitations in Plaintiff's RCF: "the claimant is limited to understanding, remembering, and carrying out simple, routine tasks and can perform jobs requiring only simple work-related decisions."

### 4.   Analysis

While the ALJ did not summarize the opinions of Drs. Amado and Telford-Tyler at length, he referenced them when he stated he was giving their opinions "more weight," and summarized them as limiting Plaintiff to "simple tasks with limited public contact." (AR 28.)  Considering the ALJ's apparent endorsement of these opinions, it appears the first matter to address is whether the limitations identified by Plaintiff were omitted from the ALJ's RFC finding as Plaintiff claims.  On this issue, neither party cited any authority.  Their arguments are essentially semantic in nature.  (See ECF No. 14 at 5-9.)

Regarding Dr. Amado's opinion, Plaintiff contends in his Reply that the need for instructions to be clearly explained, in addition to simple, "represents a different work environment."  (Id. at 9.)  The Commissioner contends instead that it is subsumed within the need for simple instructions, noting that Dr. Amado also concluded that Plaintiff was "'[n]ot significantly limited' in his ability to carry out simple instructions, make simple work-related decisions, and sustain an ordinary routine without special supervision." (Id. at 8 (citing AR 92).)

The Court notes that Dr. Amado's assessment that Plaintiff was not significantly limited in the "ability to sustain an ordinary routine without special supervision," was under the category of "sustained concentration and persistence limitations," rather than "understanding and memory limitations."  (AR 92.)  This suggests that Plaintiff does not need special supervision to satisfy his schedule and routine requirements, but does not necessarily reflect whether he would need clearly explained instructions.  However, the

1  Court also notes that Dr. Telford-Tyler specifically explained that Plaintiff "is capable of

2  asking simple and detailed questions and making requests for assistance."  (AR 138.)

3  Considering these two statements together, it appears that Plaintiff can obtain the kind

4  of instructions necessary, such that the ALJ did not need to separately identify the need

5  for clearly explained instructions in the RFC.

6          As to Dr. Telford-Tyler's opinion, Plaintiff contends that her limitation of Plaintiff

7  to some detailed tasks modifies her otherwise unqualified opinion regarding simple

8  tasks.  (ECF No. 14 at 9 ("The adjectival phrase modifies the range of simple work that

9  Pierce can perform.  Dr. Telford-Tyler did not permit the full range of simple work but

10 limited that capacity to <u>some</u> detailed work.  That limiting phrase requires an inference

11 that Pierce cannot perform <u>all</u> detailed tasks.")  The Commissioner seemingly argues

12 that simple and detailed tasks are exclusive of one another, concluding "the ALJ

13 properly focused on Plaintiff's ability to perform simple tasks and actual limitations."

14 (<u>Id.</u> at 8 (citing AR 137).)  Upon consideration, the Court finds that it was reasonable for

15 the ALJ to conclude that "simple" and "detailed" were mutually exclusive, as used by Dr.

16 Telford-Tyler.

17         "The Social Security regulations separate a claimant's ability to understand and

18 remember things and to concentrate into just two categories: 'short and simple

19 instructions' and 'detailed' or 'complex' instructions."  <u>Meissl v. Barnhart</u>, 403 F. Supp.

20 2d 981, 983–84 (C.D. Cal. 2005) (citing 20 C.F.R. § 416.969a(c)(1)(iii); 20 C.F.R. part 404,

21 subpart P, Appendix 1, Listing 12.00C(3)).  This agency dichotomy is demonstrated

22 throughout the AR.  The form used by both Drs. Amado and Telford-Tyler for their

23 MRFCAs asks the doctor to assess the claimant in multiple categories for their abilities

24 regarding "very short and simple instructions," and in a separate question, "detailed

25 instructions."  (<u>See</u> AR 92. 136-37.)  This suggests that the two are considered different

26 groups.  It appears from Dr. Telford-Tyler's opinion itself that she used "simple" and

27 "detailed" in a mutually exclusive way, rather than an overlapping one.  In her

28 statement that Plaintiff "has the ability to understand, remember, and carry out simple,

1    and some detailed instructions," she does not qualify her endorsement of simple

2    instructions, but adds an endorsement for only some detailed instructions.  (AR 137.)

3    This is consistent with her findings that Plaintiff was not significantly limited in in his

4    ability to carry out simple instructions, but he is moderately limited at carrying out

5    detailed instructions.  (AR 137.)  This is also consistent with Dr. Telford-Tyler's

6    concurrence with another reviewer's assessment that Plaintiff should be "limited to

7    simple tasks with limited public contact," absent any qualification.  (AR 130.)

8    Considering her statements in context, the Court understands detailed instructions and

9    tasks as used by Dr. Telford-Tyer to be exclusive of simple instructions and tasks.

10          Therefore, the Court finds that the ALJ's RFC appropriately included the

11   limitations identified by both Drs. Amado and Telford-Tyler, and the ALJ did not need to

12   give reasons for rejecting those opinions.  See, e.g., Hines v. Berryhill, Case No. 16-cv-

13   03078-JSC, 2017 WL 3251915, at *10-11 (N.D. Cal. Jul. 31, 2017) (finding that, despite

14   the ALJ's failure to discuss the opinions of non-examining doctors, their "findings were

15   included in and consistent with the limitations the ALJ posed to the VE").

16   **B.    The ALJ Erred by Failing to Reconcile the Vocational Expert's Testimony that**

17   **       Plaintiff Could Do the Job of Order Clerk with the DOT**

18          Plaintiff contends that the ALJ erred by failing to resolve conflicts between

19   Plaintiff's RFC and the Dictionary of Occupational Titles ("DOT") descriptions of two of

20   three occupations the VE testified Plaintiff could perform, Order Clerk and Touch-up

21   Screener.  (ECF No. 14 at 10-11.)  Plaintiff further argues that a reasonable ALJ would

22   have rejected the VE's testimony after she "failed to properly identify work in the first

23   two occupations."  (Id. at 11.)

24          The Commissioner argues that the Court need not address whether Plaintiff's

25   ability to perform the first two occupations conflicts with the DOT, because Plaintiff

26   concedes that the DOT does not conflict with Plaintiff's ability to perform the VE's third

27   identified occupation, Final Assembler, which the VE testified exists at 30,000 jobs

28   nationally.  (Id. at 11-12.)  Further, the Commissioner argues that a conflict with DOT is

1  not a basis to disregard the totality of the VE's testimony, particularly where the

2  occupation of touchup screener is compatible with the ability to perform simple, routine

3  tasks.  (Id. at 12.)

4      **1.   Applicable law**

5      The ALJ is to "take administrative notice of 'reliable job information' available

6  from various publications, including the DOT," and consider the testimony of VEs.  SSR

7  00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d)-(e),

8  416.966(d)-(e)).  The DOT sets forth job requirements for each listed occupation,

9  assigning numerical values to the level of necessary General Educational Development

10  ("GED"), or informal and formal educational aspects, required for job performance.

11  Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (citing DOT, App. C, 1991 WL 688702

12  (4th ed. 1991)).  Among the GED levels is a category that quantifies the reasoning ability

13  needed to perform the job, "ranging from Level 1 (which requires the least reasoning

14  ability) to Level 6 (which requires the most)."  Id.  VEs may testify about the specific

15  occupations that a person with claimant's RFC would be able to perform.  Id. at 846

16  (citing 20 C.F.R. § 416.966(e)).

17      "When there is an apparent unresolved conflict between the VE[] evidence and

18  the DOT, the adjudicator must elicit a reasonable explanation for the conflict before

19  relying on the VE[] evidence to support" a disability determination.  SSR 00-4P, 2000 WL

20  1898704, at *2; see also id. at *4 ("[T]he adjudicator has an affirmative responsibility to

21  ask about any possible conflict between that VE[] evidence and information provided in

22  the DOT."); Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (explaining that

23  SSR 00-4P requires an ALJ to "determine whether the expert's testimony deviates from

24  the [DOT] and whether there is a reasonable explanation for any deviation").  The ALJ

25  must explain the reconciliation in its decision based on persuasive evidence.  SSR 00-4P,

26  2000 WL 1898704, at *4; Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001).  This

27  process ensures that the record is clear regarding an ALJ's reasons for relying on VE

28  testimony that is inconsistent with the DOT.  Massachi, 486 F.3d at 1153.

**2.    Analysis**

Plaintiff first argues that the ALJ erred at step five when he concluded that plaintiff could perform the job of Order Clerk, because the required reasoning level for this job is greater than Plaintiff's RFC for simple, routine tasks and the ALJ never resolved the conflict.  (ECF No. 14 at 10.)  The Commissioner does not explicitly disagree.

The VE's testimony conflicted with the DOT.  When determining the Plaintiff's RFC, the ALJ found that Plaintiff was "limited to understanding remembering and carrying out simple, routine tasks and can perform jobs requiring only simple work-related decisions." (AR 22.)  However, the occupation of Order Clerk is assigned to Reasoning Level 3, which requires a worker to: "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations." DICOT 209.567-014 (G.P.O.) 1991 WL 671794; (AR 390).  The Ninth Circuit has explicitly held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning."  Zavalin, 778 F.3d at 846-47.

The ALJ did not reconcile this inconsistency as required, because he never recognized it.  Though he initially asked the VE to inform him if her testimony was inconsistent with the DOT, (AR 66), the VE did not identify this inconsistency and the ALJ did not follow up about her specific testimony regarding Plaintiff's ability to work as an order clerk.  In his decision, the ALJ specifically stated that "[p]ursuant to SSR 00-4p, the undersigned has determined that the [VE]'s testimony is consistent with the information contained in the [DOT]."  (AR 29.)  Because he failed to identify and reconcile the inconsistency, the ALJ erred.  Zavalin, 778 F.3d at 847.

Plaintiff also alleges that the ALJ failed to reconcile an apparent inconsistency between Plaintiff's RFC and the DOT requirements of the second occupation identified by the VE, Touch-up Screener.  (ECF No. 14 at 11.)  Specifically, Plaintiff argues that

1 "Touch-up [S]creener involves more than simple work-related decisions based on the
2 data code contained in the DOT number as explained by the DOT appendix."  (Id.)

3       The DOT assigns numerical values to so-called "Worker Functions."  These Worker
4 Functions describe occupational requirements for a worker to function in relation to
5 data, people, and things, which are reflected in the fourth, fifth, and sixth digits of the
6 occupational code, respectively.  DOT, Appendix B, Explanation of Data, People, and
7 Things, 1991 WL 688701.  The fourth digit, data, ranges from 0 (the most complex, i.e.,
8 synthesizing) to 6 (the least complex, i.e., comparing).  Id.  The DOT defines data as,
9 "[i]nformation, knowledge, and conceptions, related to data, people, or things, obtained
10 by observation, investigation, interpretation, visualization, and mental creation."  Id.
11 Data are intangible and include numbers, words, symbols, ideas, concepts, and oral
12 verbalization."  Id.  The least-complex Worker Function level for data is described as
13 "[j]udging the readily observable functional, structural, or compositional characteristics
14 (whether similar to or divergent from obvious standards) of data, people, or things."  Id.
15 All occupations in the DOT include a data Worker Function level, as the DOT "is based on
16 the premise that every job requires a worker to function, in some degree in relation to
17 Data, People, and Things."  Id.

18       Based on the foregoing, Plaintiff has failed to identify any conflict between the
19 VE's testimony that Plaintiff could work as a Touch-up Screener and the DOT.  Every
20 occupation is assigned a data code, and touch-up screener has the simplest possible
21 data work function level, 6.  If this data code were incompatible with a limitation to
22 simple, routine tasks, then such a restriction would be incompatible with any work at all.
23 Plaintiff's argument is also internally inconsistent, as Plaintiff "concedes that [F]inal
24 [A]ssembler [DOT 713.687-018] does not have an apparent conflict with the DOT,"
25 despite sharing the same level 6 data code that is present in the Touch-up Screener job.
26 (ECF No. 14 at 11.)  Finally, multiple district courts have found that occupations that
27 require Reasoning Level 2, including Touch-up Screener, are consistent with an RFC to
28 simple, routine tasks.  See Patton v. Astrue, No. 6:11-cv-06423-ST, 2013 WL 705909, at

1  *1 (D. Or. Feb. 25, 2013) ("[A] claimant who is limited to 'simple, routine tasks and

2  instructions' is capable of performing a job requiring Level Two reasoning."), Meissl, 403

3  F. Supp. 2d at 984-85 (finding no apparent conflict between RFC for "'simple, repetitive'

4  tasks" and VE testimony that the plaintiff could perform a job with Level Two

5  reasoning); see also Abrew v. Astrue, 303 Fed. App'x 567, 569–570 (9th Cir.2008)

6  (affirming the ALJ's finding that plaintiff could perform jobs with Level Two reasoning,

7  despite a limitation to simple tasks) and Anna F. v. Saul, Case No. ED CV 19-511-SP, 2020

8  WL 7024924, at *5-*6 (C.D. Cal. Nov. 30, 2020) (finding harmless the ALJ's error in failing

9  to reconcile the conflict that the plaintiff could perform an occupation with Level Three

10 reasoning despite an RFC for "simple, routine tasks," where the VE had also testified

11 that the plaintiff could perform two jobs with Level Two reasoning, Touch-up Screener

12 and Addresser) (emphasis added).

13       Plaintiff suggests that the VE's error completely discredits her testimony.  (ECF

14 No. 14 at 11.)  The Court will address this argument infra, in the section reviewing the

15 ALJ's step five determination for substantial evidence.  Whether the ALJ's error

16 regarding the Order Clerk position warrants remand depends on whether the step five

17 determination is supported by substantial evidence without the ALJ's Order Clerk

18 position testimony.

19 **C.**    **Plaintiff Did Not Forfeit Jobs-Numbers Arguments Raised Before the Appeals**

20      **Council**

21       Plaintiff challenges whether substantial evidence supports the ALJ's Step Five

22 determination, relying on jobs-numbers evidence from non-DOT sources that conflicts

23 the VE's testimony.  (ECF No. 14 at 14-17.)  Before the Court addresses this argument on

24 the merits, it must first ascertain whether, as the Commissioner contends, the argument

25 has been waived.  (Id. at 18.)

26     **1.**    **Applicable law**

27       The heart of this issue comes down to the interplay of two lines of Ninth Circuit

28 cases, those related to waiver of issues not presented during the administrative

1  proceedings, and a case holding that evidence presented for the first time to the

2  Appeals Council is part of the administrative record and should be considered in the

3  district courts' substantial evidence review.

4      In Meanel v. Apfel, the Ninth Circuit considered whether a claimant had waived

5  an argument that contrary to the VE's testimony, there were insufficient numbers of a

6  particular job in the local area, when she failed to present the argument and her

7  alternative data to the ALJ or the Appeals Council.  172 F.3d 1111, 1115 (9th Cir. 1999).

8  Applying the waiver rule for the first time in the social security context, the Court held

9  that "at least when claimants are represented by counsel, they must raise all issues and

10  evidence at their administrative hearings in order to preserve them on appeal."  Id.  The

11  Court continued that courts may "only excuse a failure to comply with this rule when

12  necessary to avoid a manifest injustice."  Id.  This conclusion was supported by the

13  Court's observation that "[t]he ALJ, rather than this Court, was in the optimal position to

14  resolve the conflict between Meanel's new evidence and the statistical evidence

15  provided by the VE."  Id.

16      A similar issue came before the Court in Shaibi v. Berryhill, where the Ninth Circuit

17  found that the claimant had forfeited a challenge to the VE's job-numbers testimony

18  using contradictory evidence by raising the issue and submitting supporting evidence for

19  the first time in district court.  883 F.3d 1102, 1108-10 (9th Cir. 2017).  The Court

20  rejected the plaintiff's contention that the United States Supreme Court's holding in

21  Sims v. Apfel, 530 U.S. 103, 112 (2000), that "[c]laimants who exhaust administrative

22  remedies need not also exhaust issues in a request for review by the Appeals Council in

23  order to preserve judicial review of those issues," effectively overruled Meanel.  Shaibi,

24  833 F.3d at 1109.  The Court reasoned that on its facts, Sims addressed whether issues

25  needed to be specifically raised before the Appeals Council, not whether they needed to

26  be raised before the ALJ or on the administrative proceedings generally.  Id. (quoting

27  Sims, 530 U.S. at 107) ("Whether a claimant must exhaust issues before the ALJ is not

28  before us").  Observing that "a claimant will rarely, if ever, be in a position to anticipate

1   the particular occupations a VE might list and the corresponding job numbers to which a

2   VE might testify at a hearing," the Court noted that "[i]t is enough to raise the job-

3   numbers issue in a general sense before the ALJ."  Id. at 1110.  In such circumstances,

4   the Court anticipated that ALJs would honor requests to leave the administrative record

5   open for additional evidence on the matter, and in the absence of such permission, the

6   claimant could raise relevant information to the Appeals Council.  Id. (citing Brewes v.

7   Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012)).  In conclusion, the

8   Court again noted that "the ALJ was in the best position to evaluate and resolve any

9   conflicting evidence concerning the number of jobs in relevant occupations," and added

10  that "[the claimant] did not even obliquely suggest that the VE's job estimates might be

11  unreliable at any point during the administrative proceedings."  Id.

12       Because Shaibi did not raise a job-numbers challenge at any point during the

13  administrative proceedings, the Shaibi decision did not clearly resolve whether

14  forfeiture occurs in circumstances like those presented here, where a represented

15  claimant challenged job numbers with briefing and new evidence before the Appeals

16  Council after failing to raise the issue before the ALJ.  On one hand, the Court's

17  indication that the ALJ is in the best position to resolve conflicting job numbers evidence

18  and the Court's acknowledgement that "it is enough to raise the job-numbers issue in a

19  general sense before the ALJ," suggest that the claimant must raise the issue before the

20  ALJ.  See id.  On the other hand, the specific holdings in Shaibi generally refer to the

21  administrative proceedings, rather the hearing before the ALJ.  See id. at 1109

22  (emphasis added) ("We now hold that when a claimant fails entirely to challenge a

23  vocational expert's job numbers during the administrative proceedings before the

24  agency, the claimant forfeits such a challenge on appeal, at least when the claimant is

25  represented by counsel."), and at 1110 ("Shaibi did not even obliquely suggest that the

26  VE's job estimates might be unreliable at any point during the administrative

27  proceedings.  His claim is therefore forfeited.'")  Additionally, the Court's explanation

28  that its holding is consistent with the Social Security Act's provision that "a reviewing

court presented with new evidence may remand to the agency for consideration of that evidence, but only upon a showing of 'good cause for the failure to incorporate such evidence into the record in a prior proceeding'" does not appear to apply to circumstances where the "new evidence" is already part of the administrative record by virtue of its submission to the Appeals Council.  See id. at 1109.

Plaintiff argues that Brewes, not Shaibi, should be applied in this case.  (ECF No. 14 at 14, 19.)  In Brewes, the claimant submitted new medical opinion evidence from her treating mental health care providers for the first time to the Appeals Council.  682 F.3d at 1161, 1163.  While Brewes contended the evidence was properly before the court because it had been considered and made part of the administrative record by the Appeals Council, the Commissioner argued that the new evidence was not part of the administrative record and could only be considered if the plaintiff showed good cause for failing to present material evidence to the ALJ.  Id. at 1161.  Recognizing that this was a decision that had split the circuits, (id.), the Court held that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Id. at 1163.  When analyzing the impact of the evidence, the Court found that Brewes was not required to show that the new evidence was material or that good cause had prevented the claimant from submitting it before the ALJ because 42 U.S.C. § 405(g) did not apply to evidence that a claimant submitted to the Appeals Council, which thereby became part of the administrative record.  Id. at 1164.

Considering both Brewes and Shaibi, Courts have not resolved whether a claimant waives the argument when he presents job-numbers arguments for the first time to the Appeals Council.  The Ninth Circuit has not published a case on point, and the unpublished cases are inconsistent.  Compare Shapiro v. Saul, 833 F. App'x 695, 696 (9th Cir. 2021) (citing Shaibi, 883 F.3d at 1109 and Meanel, 172 F.3d at 1115) (holding that the plaintiff's submission of jobs numbers evidence to the Appeals Council did not

permit the Court to reach the issue, which had been forfeited when the plaintiff's counsel did not raise it before the ALJ) with Jaquez v. Saul, 840 Fed. App'x 246, 247 n.2 (9th Cir. 2021) (citing Brewes, 682 F.3d 1157) ("The Commissioner argues that Jaquez forfeited or waived this issue because he did not present this evidence before the ALJ. But it appears that the Appeals Council considered this evidence in denying Jaquez's appeal.  Jaquez thus neither waived nor forfeited this challenge."), Gonzalez v. Saul, 833 F. App'x 464, 465 (9th Cir. 2021) ("Failure to raise the claim before either the ALJ or the Appeals Council results in forfeiture of the argument.") (emphasis added), and Kremlingson v. Saul, 800 F. App'x 531, 532 (9th Cir. 2020) ("Where a represented claimant fails to raise an issue before both the ALJ and the Appeals Council, the claimant forfeits the argument.") (emphasis added).

District court decisions reflect a similar lack of consensus regarding this issue. Compare, e.g., Roderick L. A. G. v. Saul, No. CV 20-5727-RAO, 2021 WL 2590159, at *4 (C.D. Cal. June 24, 2021) ("Plaintiff's failure to raise the issue at the hearing of whether the VE's testimony was restricted to full-time work [despite raising it with evidence before the Appeals Council] precludes Plaintiff from overcoming forfeiture of that issue."), McCloud v. Berryhill, Case No. ED CV 16-2400-SP, 2018 WL 987222, at *4-5 (C.D. Cal. Feb. 20, 2018) (holding that a plaintiff forfeited challenge to VE's testimony based on conflict with non-DOT data after raising it initially before the Appeals Council), and Tommy D. J. v. Saul, No. EDCV 20-1013-RAO, 2021 WL 780479, at *4-5 (C.D. Cal. Mar. 1, 2021) (finding waiver of alternative jobs data arguments, including about job-numbers, where the plaintiff first raised the evidence and argument before the Appeals Council), with Dickerson v. Saul, Case No. 2:20-cv-01585-DJA, 2021 WL 3832223, at *4 (D. Nev. Aug. 27, 2021) ("Under binding Ninth Circuit precedent, a plaintiff who fails to raise a challenge before the ALJ but submits evidence in support of that challenge to the Appeals Council, preserves that challenge on appeal to the district court.") (citing Brewes and Shaibi), David G. v. Saul, No. ED CV 19-00703-DFM, 2020 WL 1184434, at *4 n.2 (C.D. Cal. Mar. 11, 2020), aff'd sub nom. George v. Saul, 837 F. App'x 516 (9th Cir.

1  2021) (substantively addressing job numbers issue despite claimant first raising it on

2  appeal), and <u>Austin v. Saul</u>, No. 19-CV-604-JM(WVG), 2020 WL 4336071, at *30 (S.D. Cal.

3  July 28, 2020), <u>report and recommendation adopted by</u> 2020 WL 5077738 (S.D. Cal. Aug.

4  26, 2020) ("[D]istrict courts in the Ninth Circuit have distinguished and declined to apply

5  <u>Meanel</u> where the claimant failed to present an argument or issue to the ALJ but

6  presented it to the Appeals Council in a subsequent request for review of the ALJ's

7  decision," and collecting cases.)

8      **2.   Analysis**

9        With this state of the law, this Court must ascertain whether Plaintiff waived a

10  job-numbers challenge by first raising it before the Appeals Council.  First, as the Ninth

11  Circuit limited the <u>Sims</u> case to its facts in <u>Shaibi</u>, (<u>see</u> 883 F.3d at 1109), the Court notes

12  that both <u>Meanel</u> and <u>Shaibi</u> involved forfeiture of issues that were raised neither

13  before the ALJ nor the Appeals Council.  <u>See</u> <u>Meanel</u>, 172 F.2d at 1115, <u>Shaibi</u>, 883 F.3d

14  at 1108.  Nevertheless, the language of the <u>Meanel</u> holding was much broader than the

15  facts required, that "at least when claimants are represented by counsel, they must

16  raise all issues and evidence at their administrative hearings in order to preserve them

17  on appeal." 172 F.2d at 1115.  The holding in <u>Brewes</u>, which followed <u>Meanel</u> and

18  preceded <u>Shaibi</u>, was "that when the Appeals Council considers new evidence in

19  deciding whether to review a decision of the ALJ, that evidence becomes part of the

20  administrative record, which the district court must consider when reviewing the

21  Commissioner's final decision for substantial evidence."  682 F.3d at 1163.  Following

22  <u>Brewes</u>, <u>Shaibi</u> seemed to narrow the broad statement from <u>Meanel</u>, holding issues had

23  to be raised "during <u>administrative proceedings</u> before <u>the agency</u>," rather than at the

24  hearing before the ALJ.  Shaibi, 883 F.3d at 1109 (emphasis added).  It appears to this

25  Court that the language from Shaibi often relied upon to find that failure to raise job-

26  numbers before the ALJ is merely dicta, describing best practices.  <u>See id.</u> at 1110 ("It is

27  enough to raise the job-numbers issue in some general sense before the ALJ.").

28  Therefore, neither <u>Meanel</u> nor <u>Shaibi</u> mandates forfeiture here.

1    Instead, the Court finds the circumstances here most akin to those in <u>Brewes</u>.  As

2    in Brewes, Plaintiff submitted evidence and argument responsive to the ALJ's decision to

3    the Appeals Council.  At the administrative hearing, the ALJ asked two different

4    hypothetical questions to the VE, both potentially supported by the evidence.  (AR 68-

5    70.)  While the first hypothetical rendered the jobs-numbers the Plaintiff now

6    challenges, the ALJ's second hypothetical, which added to the RFC that a claimant

7    "would be off task greater than ten percent of the workday and/or absent for more than

8    one day month due to physical and mental health issues," resulted in the VE's opinion

9    that there would be no compatible jobs in the national economy.  (<u>Id.</u> at 68-69.)  After

10   the ALJ relied on the first hypothetical, Plaintiff submitted the additional job-numbers

11   evidence to the Appeals Council.  It is difficult to distinguish in any meaningful way

12   between the additional, responsive medical evidence in <u>Brewes</u> and the additional job-

13   numbers evidence and argument here.  Both issues, Brewes' RFC and whether Plaintiff

14   could perform a sufficient number of jobs in the national economy, were before both

15   the ALJ and Appeals Council.  In both cases, the evidence submitted by the claimants to

16   the Appeals Council could have theoretically been raised before the ALJ, and each

17   Plaintiff could have requested additional time to submit responsive evidence but did

18   not.  Both submitted their evidence for the first time to the Appeals Council.  Following

19   the logic in <u>Brewes</u>, this Court must consider the new jobs-numbers evidence and

20   arguments when reviewing the Agency's decision for substantial evidence.  Therefore,

21   this Court finds that to the extent Plaintiff submitted his arguments and evidence to the

22   Appeals Council, he has not waived his jobs-numbers arguments.  Accordingly, the Court

23   will consider whether Plaintiff's argument and alternative evidence undermine the VE

24   testimony such that the ALJ's decision is not supported by substantial evidence.

25   Specifically, the Court notes that Plaintiff's brief to the Appeals Council addressed

26   most of the arguments Plaintiff now raises.  (<u>Compare</u> AR 386-89 <u>with</u> ECF No 14 at 14-

27   18.)  However, the Court notes that Plaintiff's argument based on County Business

28   Practices ("CBP") data for the number of jobs in ophthalmic goods manufacturing is

1    being raised for the first time in the district court.  (See AR 386-89 (Plaintiff's letter to

2    the Appeals Council in support of request for review, with no mention of CBP data).)

3    Although one of the 110 pages of data submitted by Plaintiff was a CPB printout that

4    contained the raw data for the argument, the argument described in Plaintiff's instant

5    briefing here was completely absent from his brief to the Appeals Council.  (AR 386-89,

6    see also AR 390-500 (jobs data with relevant CBP data on AR 460).)  Because the ALJ did

7    not have a sua sponte duty to resolve arguable conflicts between the CBP and the VE

8    testimony, the Court does not find the submission of that page, essentially a needle in a

9    haystack, sufficient to preserve the argument.  Because Plaintiff did not make the

10   argument about the significance of the CBP data before the Appeals Council, that

11   argument is waived.

12   **D.    Substantial Evidence Supports the ALJ Step Five Determination**

13           The Court now addresses Plaintiff's unwaived job-numbers argument on its

14   merits.  Plaintiff contends that there is not substantial evidence to support the ALJ's

15   decision at step five of the sequential evaluation process.  (ECF No. 14 at 14.)

16           **1.    Applicable law**

17           "At step five of the sequential evaluation process, an ALJ must determine whether

18   a disability claimant who cannot perform past relevant work is nevertheless capable of

19   performing other work that exists in significant numbers in the national economy."

20   Shaibi, 883 F.3d at 1108 (citing 20 C.F.R. § 404.1520(a)).  It is the Commissioner's burden

21   to "identify specific jobs in substantial numbers in the national economy that [a]

22   claimant can perform despite [his] identified limitations."  Zavalin, 778 F.3d at 845

23   (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)).  The Ninth Circuit has

24   not established a minimum number of jobs that constitutes a significant number,

25   however, as the parties agree, the Court in Gutierrez v. Commissioner of Social Security,

26   740 F.3d 519, 528-29 (9th Cir. 2014), has held that 25,000 jobs in the national economy,

27   while a close call, is a significant number of jobs.

28

A reviewing court should consider all evidence, including new evidence submitted to the Appeals Council, in its review of the ALJ's decision and whether it is supported by substantial evidence.  Brewes, 682 F.3d at 1163; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).  "[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  The VE's testimony alone can be substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) (finding substantial evidence supported ALJ's determination that the claimant's prior work experience qualified him to perform the job of time keeper based solely on VE testimony).

An ALJ may rely on a VE's testimony about the number of jobs in the national economy without inquiring into the foundation for the opinion because the "VE's recognized expertise provides the necessary foundation for his or her testimony."  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); see also Johnson, 60 F.3d at 1435–36.  Further, in determining the existence of jobs claimants can do at step five, the Social Security Administration "will take notice" of "reliable job information available from various governmental and other publications," including the DOT, the Census Bureau's County Business Patterns ("CBP") and Census Reports, occupational analyses prepared for the Administration by state employment agencies, and the Bureau of Labor Statistics' Occupational Outlook Handbook ("OOH").  20 C.F.R. § 404.1566(d).  However, the ALJ does not have a sua sponte obligation to resolve conflicts between the VE testimony and sources other than the DOT.  Shaibi, 883 F.3d at 1109-10; see also Seaberry v. Berryhill, No. 2:16-cv-2310-EFB, 2018 WL 1425985, at *5-6 (E.D. Cal. Mar. 22, 2018) (collecting cases).

While a VE's testimony is ordinarily sufficient by itself to support the ALJ's step five finding, contrary evidence can undermine such testimony.  See Ford v. Saul, 950 F.3d 1141, 1160 (9th Cir. 2020) ("We have long held that 'in the absence of any contrary evidence, a [VE's]testimony is one type of job information that is regarded and inherently reliable.'") (quoting Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017)).  "A

court that must review a VE's testimony for substantial evidence may consider

circumstances such as, for example, the VE's credentials, the cogency of his testimony

and use of a well-accepted methodology, and the existence of conflicting evidence in

the rest of the record."  Tracey v. Saul, Case No. 5:19-cv-02372-MAA, 2021 WL 369546,

at *3 (C.D. Cal. Feb. 3, 221) (citing Biestek, 139 S. Ct. at 1155).).  The inquiry for assessing

whether a VE's testimony is substantial evidence "is case-by-case" and "takes into

account all features of the vocational expert's testimony, as well as the rest of the

administrative record," while deferring to the presiding ALJ.  Biestek, 139 S. Ct. at 1157.

Where the discrepancy between the VE testimony on job-numbers and other credible

sources is striking, such an unaddressed inconsistency can render the VE testimony

insufficient.  See Buck, 869 F.3d at 1052 (remanding case to ALJ to address discrepancy

between VE's testimony that 843,800 jobs existed in the national economy, when by

using the same software, claimant's attorneys had found there were only 2,296).

### 2.    Analysis

At step five, the ALJ relied on the VE's testimony regarding the numbers of the

identified occupations in the national economy, including that there were 14,000 jobs as

a Touch-up Screener and 30,000 jobs as a Final Assembler.[4]  (AR 29.)  Despite having

ample opportunity to question the VE about her qualifications or methodology for

deriving her jobs numbers testimony, Plaintiff's counsel did not do so.  (AR 66, 69-71.)

Plaintiff's only argument regarding unreliability stems from the VE's failure to identify

that her opinion that Plaintiff could do the job of Order Clerk conflicted with the DOT,

despite her promise to identify any such conflicts.  (ECF No. 14 at 11.)

Because Plaintiff did not and has not challenged the VE's qualifications or

methodology, Plaintiff's primary argument is related to other evidence in conflict with

---

[4] Because the ALJ failed to resolve the conflict between the VE's testimony that Plaintiff could work as an order clerk and the fact that Plaintiff's RFC did support the reasoning ability required by the DOT, the Court does not consider the job-numbers for order clerk in this analysis.

the VE's testimony.  Plaintiff first submitted a brief to the Appeals Council, with evidence Plaintiff contends contradicted the VE's testimony.  (AR 390-500.)  Specifically, Plaintiff submitted approximately 110 pages, primarily of printouts from "Occu-Collect." (Id.)  Plaintiff's unwaived arguments are supported by his counsel's analysis of this Occu-Collect data.  For instance, after reciting a series of percentages that Occu-Collect attributes to the Department of Labor, Plaintiff claims that "accounting for skill level, the report of medium work, and the standing/walking data, it is impossible for both the [VE's] testimony identifying final assembler and the data from Labor about production workers to coexist as true."  (ECF No. 14 at 16-17.)  Regarding the touch-up screener position, Plaintiff's argument follows a similar line. Plaintiff first identifies the occupation as belonging to the group of 574,000 jobs as "inspectors, testers, sorters, samplers, and weighers," based on the Selected Characteristics of Occupations in the DOT.  (Id. at 17 (citing AR 391, 392, 407).)  The Occu-Collect printout Plaintiff submitted asserts that the Bureau of Labor Statistics data demonstrates that 21.2% of those jobs are unskilled work, 21.5% are light work, 63.3% are medium work; they stand 0.8 hours per day at the 10th percentile; and 3 hours per day at the 25th percentile.  (Id. (citing AR 420, 438, 442).)  Taken together, Plaintiff claims that "it is impossible for both the [VE's] testimony identifying touch-up screener and the data from Labor about inspectors to coexist as true."  (Id.)

But Plaintiff does not explain how his lists of percentages relate to one another or are inconsistent with the VE's testimony, and his position is not evident.  Plaintiff provides no authority for his interpretation of this data, or why it is more reliable than the VE's testimony.  Further, Plaintiff relies on Occu-Collect, which many Courts have refused to find controlling.  See Dickerson, 2021 WL 3832223, at *6 (collecting cases). These arguments present, at best, evidence that could support an alternative finding, not evidence that precludes the VE's finding.  See id. (citing Ford, 950 F.3d at 1158-60). Therefore, Plaintiff has failed to show a conflict that undermines the VE's credibility.

1    Though the ALJ erred in not addressing the conflict between the VE's testimony

2    and the DOT's descriptions of the order clerk occupation, Plaintiff provides no authority

3    that such an error should result in the complete rejection of the VE testimony.  To the

4    contrary, courts routinely find such error harmless if the remaining identified

5    occupations that Plaintiff can perform exist in significant numbers nationally.  See, e.g.,

6    Little v. Berryhill, 690 F. App'x 915, 917 (9th Cir. 2017) (holding that the ALJ improperly

7    based her determination that claimant was not disabled on vocational expert's

8    testimony that claimant could perform four jobs, even though two of the jobs were not

9    supported by DOT, but finding that, "the job numbers error would be harmless if the

10   occupations that Little can perform exist in significant numbers either regionally or

11   nationally"); Anna F., 2020 WL 7024924 at *5-*6 (similar).

12   Based on the foregoing, the VE's testimony that Plaintiff could perform jobs as a

13   Final Assembler and a Touchup Screener, which comprise a combined 42,000 jobs in the

14   national economy, provides substantial evidence to support the ALJ's step five

15   determination.

## VI.  CONCLUSION AND ORDER

17   For the foregoing reasons, the Court **ORDERS** that Judgment be entered affirming

18   the decision of the Commissioner and dismissing this case.

19   **IT IS SO ORDERED.**

20   Dated:  September 28, 2021

Honorable Michael S. Berg
United States Magistrate Judge